**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2000 MAR 24 A 10: 37

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | | |
|---|---|---|
| MITCHELL CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) | 303CV246(SRU) |
| | ) | |
| MAIN ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | March 24, 2004 |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE

Plaintiff Mitchell Campbell ("Campbell"), through his undersigned counsel, submits this memorandum of law in support of his Motion in Limine to exclude any evidence relating to: (1) Mr. Campbell's purported alcohol use; (2) Mr. Campbell's criminal conviction and subsequent incarceration from June 19, 2000 until August 8, 2000; and (3) Mr. Campbell's driving license suspension in 2000. This evidence should be excluded because it is not relevant to any of the issues in this case. Further, even if there is any probative value to this evidence, it is substantially outweighed by the unfair prejudice that would result to the Plaintiff if admitted.

### PRELIMINARY STATEMENT

Mr. Campbell brought this action because of Main Enterprises, Inc.'s ("Main Enterprises") violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. 4301 *et. seq.* Main Enterprises terminated Mr. Campbell's employment because of his need to take time off from work in order to fulfill his military obligations as a member of the United States Naval Reserve.

One of the issues that has arisen during discovery is Mr. Campbell's alleged alcohol use on the job. The Defendant, however, does not claim that this alleged alcohol use played any role in the termination of the Plaintiff. Similarly, issues regarding Mr. Campbell's brief incarceration and driver's license suspension also have arisen during discovery. None of these issues played any role in Mr. Campbell's termination and therefore are wholly irrelevant to the issue central to this case - whether the Defendant violated USERRA. The only purpose of the admission of such evidence would be to inflame the passions of the jury against Mr. Campbell. Accordingly, the Court should preclude the admission of any such evidence.

## STATEMENT OF FACTS

The Plaintiff is a longtime Navy serviceman who served on active duty in the United States Navy from July 13, 1981 until his honorable discharge on November 15, 1985. At that time, he transferred to the United States Naval Reserve where he remained a member of the Selected Reserve. As a member of the Selected Reserve, he was required to serve 12-14 days of annual training per year, normally as two consecutive weeks.

The defendant, Main Enterprises, Inc., is a mechanical contractor that manufactures, assembles and installs heating and cooling systems in construction projects. Main Enterprises hired Campbell on December 11, 1995 to work as a sheet metal mechanic. The management of Main Enterprises at all times was aware of Mr. Campbell's military obligations. On August 24, 2001, Main Enterprises gave Mr. Campbell a termination notice, effective August 23, 2001, which stated that Mr.

Campbell was terminated for "job performance." Mr. Campbell was scheduled to fulfill a two week active duty requirements as a Naval Reservist beginning on August 25, 2001.

The Defendant does not claim that Mr. Campbell was terminated as the result of alcohol use on the job. Indeed, the following colloquy occurred at the deposition of Kenneth Oppedisano, the Defendant's President and the decision maker with respect to employment issues:

> Q: At any point in time, did you get information that Mitch was abusing alcohol on the job?
>
> A: No
>
> Q: So, as you sit here today, you have no evidence that Mitch was abusing alcohol on the job?
>
> A: I do not.
>
> Q: Have any evidence? You do not have any evidence?
>
> A: I do not have any evidence.
>
> Q: Okay. Do you have any evidence that Mitch was using alcohol on the job?
>
> A: I do not have any evidence of that. (Deposition of Oppedisano 23:2-20)

Further, according to Oppedisano, Mr. Campbell's alcohol use had no bearing on Main Enterprises' decision to terminate him:

> Q: Why did you terminate him (Campbell)?
>
> A: For several reasons.
>
> Q: And those reasons are?
>
> A: Shoddy workmanship; abandoning a job, plural.
>
> Q: Abandoning jobs?

3

>    A:   (Moves head up and down.) And taking materials from our facility.
>
>    Q:   Okay. We'll go there now. I think --
>
>    A:   Would you like me to continue?
>
>    Q:   Sure.
>
>    A.   And taking materials from others' facilities. And that's it.

(Deposition of Oppedisano 84:4-16)

In response to an interrogatory interposed by the Plaintiff concerning the Defendant's Affirmative Defense of "after acquired evidence," the Defendant stated that the Plaintiff "was suspected to have consumed alcohol or other intoxicants during working hours." Defendant's Response to Interrogatories, Aug. 29, 2003. The Plaintiff therefore believes that the Defendant will attempt to raise the issue of the Plaintiff's alleged alcohol use on the job, even though the Defendant does not even claim that it played any role in his termination.

Additionally, Plaintiff believes that defendant may seek to introduce evidence of Plaintiff's criminal conviction and less than two month incarceration for a motor offense in 2000 and subsequent suspension of his driver's license in that year. These incidents concerned motor vehicle violations and similarly played no role in the termination of Plaintiff's employment. As further explained below, these events are entirely irrelevant to Plaintiff's USERRA claim and any probative value is substantially outweighed by the unfair prejudice to the Plaintiff.

4

## ARGUMENT

### I. A MOTION IN LIMINE IS THE PROPER METHOD TO DETERMINE THE ADMISSIBILITY OF PLAINTIFF'S ALCOHOL USE, INCARCERATION AND DRIVER'S LICENSE SUSPENSION

A motion in limine is the proper way to determine the admissibility of any evidence concerning Mr. Campbell's alcohol use, incarceration and driver's license suspension. The purpose of a motion in limine is to "invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial." Ambrogio v. Beaver Road Associates, 267 Conn. 148, 836 A.2d 1183 (2003), citing, State v. Pharr, 44 Conn.App. 561, 581, 691 A.2d 1081 (1997). The motion prevents the introduction of inadmissible, prejudicial, or immaterial evidence to the trier of fact where the mere mention could not be remedied by an instruction to disregard. Id; *Black Law's Dictionary, (7th ed.) (1999)*. Thus, Plaintiff's motion in limine is the proper method for excluding any evidence of his alcohol use and incarceration.

In this instance, any evidence of Plaintiff's alcohol use, incarceration and driver's license suspension must be excluded for the following reasons. First, the information is irrelevant for the central issue in this case -- whether the Plaintiff was terminated because he requested time off to fulfill his two week military duty in violation of USERRA. Second, any probative value the alcohol use and incarceration might have for other peripheral considerations are outweighed by the confusing and unfairly prejudicial effect it would have on the jury. Finally, the Federal Rules of evidence do not permit the admission of evidence of the conviction, incarceration and driver's license suspension.

### A. PLAINTIFF'S ALCOHOL USE, INCARCERATION AND DRIVER'S LICENSE SUSPENSION ARE IRRELEVANT FOR DETERMINING WHETHER THE DEFENDANT VIOLATED USERRA

The Plaintiff's past alcohol use, incarceration and driver's license suspension are irrelevant for determining whether the defendant's actions constituted a violation of USERRA. Evidence is irrelevant if it has "no tendency" to make a fact that is of consequence to an action more or less probable. Federal Rules of Evidence 401. A violation of USERRA is dependent on the Plaintiff showing that his or her military status was a "motivating factor" for an employer's decision to terminate. Fink v. City of New York, 129 F.Supp. 2d 511 (E.D.N.Y. 2001). If it is established that an employee's military obligation was a motivating factor in the denial of employment, the employer may avoid liability under USERRA if it can demonstrate that it would have made the same decision without regard to the employee's protected status, on the basis of another legitimate reason. Sanguinetti v. United Parcel Service, Inc., 114 F.Supp. 2d 1313 (S.D. Fla. 2000), aff'd, 254 F.3d 75 (11th Cir. 2001).

Here, there is no allegation by the defendant that Plaintiff's alcohol use in any way impaired his work or contributed to his dismissal from the company. In fact, Kenneth Oppedisano, Main Enterprises' owner, stated in his deposition that he had no direct evidence of Plaintiff's alcohol use at all. Indeed, none of these reasons given for Plaintiff's termination involve alcohol consumption. Further, the prior incarceration for approximately 2 months for a misdemeanor motor vehicle violation and driver's license suspension are of no relevance to any of the issues in this case. As such, this evidence would be of no use to a jury in determining whether the defendant had violated USERRA and should be excluded.

### B. PLAINTIFF'S ALCOHOL USE, INCARCERATION AND DRIVER'S LICENSE SUSPENSION, EVEN IF RELEVANT, WOULD BE UNFAIRLY PREJUDICIAL

Assuming, arguendo, that there is any probative value to the Plaintiff's alcohol use, incarceration and driver's license suspension, any such relevance would be substantially outweighed by the unfair prejudicial impact on the Plaintiff. Otherwise admissible evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Federal Rules of Evidence 403.

Plaintiff's alcohol use, incarceration and driver's license suspension would be unfairly prejudicial for two reasons. First, the evidence may unnecessarily arouse the jury's emotions of prejudice or hostility towards the Plaintiff. This could result in, among other things, the jury discounting Plaintiff's testimony about crucial job-related events that led up to his termination. Second, the evidence would distract the jury's attention from the central issue of whether the defendant violated USERRA in dismissing the Plaintiff. This case is not about whether Plaintiff consumed alcohol, was incarcerated or had his driver's license suspended, but rather whether Defendant unjustifiably fired Plaintiff because he was taking time off, as required, to serve his country in the military. Whatever minimal probative value Plaintiff's alleged drinking, incarceration and driver's license suspension might have on his work history would be substantially outweighed by the confusion and distraction it would cause the jury.

### C. EVIDENCE OF THE CONVICTION AND DRIVER'S LICENSE SUSPENSION ARE NOT ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE

Any evidence relating to Plaintiff's conviction of a motor vehicle offense and driver's license suspension are not admissible under Federal Rules of Evidence 404(b)

7

and 609. Under Rule 404(b), evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show conformity therewith. Similarly, under Rule 609, impeachment of a witness with a conviction is only permitted if the conviction is for a crime punishable in excess of one year or if the crime involved dishonesty or false statement, subject to the balancing test of Rule 403.

In this case, the Plaintiff's motor vehicle conviction and subsequent incarceration and driver's license suspension are inadmissible under Rule 404(b) and Rule 609. Thus, there is simply no basis for the admission of any evidence relating to the motor vehicle conviction and subsequent incarceration and driver's license suspension.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion in Limine to exclude any evidence relating to (1) Mr. Campbell's purported alcohol use, (2) Mr. Campbell's criminal conviction and subsequent incarceration from June 19, 2000 until August 8, 2000, and (3) Mr. Campbell's driving license suspension in 2000, should be granted.

THE PLAINTIFF,
BY CUMMINGS & LOCKWOOD, LLC
HIS ATTORNEYS

By _____
Robert J. Sickinger (ct 18425)
Four Stamford Plaza
P.O. Box 120
Stamford, CT 06904
(203) 327-1700

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE has been served by hand delivery this 24th day of March, 2004, to:

>Lawrence Peikes, Esq.
>Wiggin & Dana LLP
>400 Atlantic Street
>P.O. Box 110325
>Stamford, CT  06911-0325

_____
Robert J. Sickinger

.StmLib1:1049643.1 03/23/04

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- X
MITCHELL CAMPBELL,                      :   CIVIL ACTION
                                        :   NO. 3:03CV0246 (SRU)
                    Plaintiff,          :
                                        :
v.                                      :
                                        :
MAIN ENTERPRISES, INC.,                 :
                                        :   AUGUST 29, 2003
                    Defendant.          :
---------------------------------------------------------------- X

### DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 33 and 34 and D. Conn. L. Civ. R. 26, defendant Main Enterprises, Inc. ("defendant" or "Main Enterprises"), by and through its attorneys of record, hereby responds to Plaintiff's First Set of Interrogatories and Request for Production of Documents as follows:

### GENERAL OBJECTIONS

1.  Defendant generally objects to plaintiff's interrogatories and requests for production of documents to the extent they seek information and/or documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this action.

2.  Defendant generally objects to plaintiff's interrogatories and requests for production of documents to the extent they are lacking in specificity or are otherwise vague and/or ambiguous.

**INTERROGATORY NO. 6:** Identify all persons with knowledge or information concerning the termination of Plaintiff's employment.

**RESPONSE:** Defendant objects to this interrogatory on the ground that it is overly broad in that defendant is unable without undue burden to identify every person who may have second-hand knowledge concerning the termination of plaintiff's employment. Subject to and without waiving this objection, Kenneth Oppedisano and Susan Ianello have first-hand knowledge of the circumstances surrounding the decision to terminate plaintiff's employment.

**INTERROGATORY NO. 7:** Identify the "after-acquired evidence" that Defendant alleges to "bar[] in whole in part" Plaintiff's claim; including identifying which particular claim is barred by which item of such evidence.

**RESPONSE:** Defendant objects to this interrogatory on the ground that it seeks to invade attorney work product. Subject to and without waiving this objection, the "after acquired evidence" defense was asserted in the pleadings to preserve it pending further discovery. To date, we have learned after the fact of plaintiff's termination that plaintiff was suspected to have consumed alcohol or other intoxicants during working hours and that he had abandoned the job site for extended periods while remaining on the clock.

**INTERROGATORY NO. 8:** Identify all former and current Main Enterprise employees, from 1990 to the present, who have requested leaves of absence from employment; including providing each such individual's full name, dates of employment, last known address, whether such leave was to serve in reserve or active duty in the U.S. uniformed services, status of employment with Main Enterprises; and reason for termination if applicable.

1   A.   No.

2   Q.   At any point in time, did you get
3   information that Mitch was abusing alcohol on the job?

4   A.   No.

5           MS. CONLON:  Could you read me back
6   the last two questions and answers, please?

7           (The record was read.)

8           MR. PEIKES:  In the question, was the
9   word "using" or "abusing"?

10          THE REPORTER:  "Abusing."

11  BY MS. CONLON:

12  Q.   So, as you sit here today, you have no
13  evidence that Mitch was abusing alcohol on the job?

14  A.   I do not.

15  Q.   Have any evidence?  You do not have any
16  evidence?

17  A.   I do not have any evidence.

18  Q.   Okay.  Do you have any evidence that Mitch
19  was using alcohol on the job?

20  A.   I do not have any evidence of that.

21  Q.   If we go back to Exhibit A, it talks about
22  peer reviews semiannually; May and December.  Did that
23  happen?

24  A.   Exhibit what?

25  Q.   Exhibit A.

DEL VECCHIO REPORTING SERVICES, LLC

1  A.  No.

2  Q.  Did you talk to Pat Rause about it?

3  A.  I don't believe so.

4  Q.  Why did you terminate him?

5  A.  For several reasons.

6  Q.  And those reasons are?

7  A.  Shoddy workmanship; abandoning a job,
8  plural.

9  Q.  Abandoning jobs?

10  A.  (Moves head up and down.)  And taking
11  materials from our facility.

12  Q.  Okay.  We'll go there now.  I think --

13  A.  Would you like me to continue?

14  Q.  Sure.

15  A.  And taking materials from others'
16  facilities.  And that's it.

17  Q.  What materials were taken from your
18  facility?

19  A.  There was a bench that we had purchased --
20  a table, a workbench that we had purchased that was in
21  our possession, in our facility, that was not there one
22  day when I went to go get it.  So it was a bench.

23  Q.  And how do you know that Mitch took it?

24  A.  Because I inquired.

25  Q.  From whom?