UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------- X

MITCHELL CAMPBELL,                          :
                                                          :        DOCKET NO. 3:03CV0246(SRU)
                    Plaintiff,              :
                                                          :
v.                                                        :
                                                          :
MAIN ENTERPRISES, INC.,                     :
                                                          :        APRIL 16, 2004
                    Defendant.              :

---------------------------------------------------------- X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION IN LIMINE

Plaintiff's opposition to defendant's motion in limine, seeking exclusion of (i) plaintiff's testimony as to hearsay accounts of statements allegedly made by defendant's President, Ken Oppedisano, to the effect that plaintiff's military leave obligations were disruptive to operations; and (ii) plaintiff's testimony as to a remark allegedly made by Susanne Ianniello, a former Main Enterprises employee, suggesting Mr. Oppedisano might refuse to honor plaintiff's request for military leave, is marred to some extent by a mischaracterization concerning the scope of the evidentiary restriction sought by defendant, and, more broadly, a misunderstanding of the governing evidentiary principles.

### I.    Remarks Attributed to Mr. Oppedisano

Contrary to plaintiff's contention, defendant's motion in limine does not "broadly seek[] to preclude Campbell from testifying as to any statements made by Oppedisano to the effect that Campbell's military leave obligations were disruptive to operations." (Pltf's Mem. at p. 3). Obviously, any such statements would be admissible into evidence as admissions of a party opponent. Fed. R. Evid. 801(d)(2). Defendant's motion is narrowly focused on plaintiff's

testimony as to *other employees' out of court statements* depicting remarks allegedly made by Mr. Oppedisano expressing displeasure about plaintiff's military leaves of absence, which falls well within Rule 801's definition of hearsay.

"Hearsay is an out of court assertion, other than one made by the declarant while testifying at the trial or hearing, introduced in court to prove the truth of the matter asserted. Generally, hearsay evidence is inadmissible.  To be admissible, therefore, alleged hearsay evidence must be defined as non-hearsay or fall within one of the accepted exceptions to the general exclusionary rule." Steinberg v. Obstetrics-Gynecological & Infertility Group, P.C., 260 F. Supp. 2d 492, 494-95 (D. Conn. 2003)(Citations omitted).

Plaintiff's co-workers' "out of court assertion[s]" would necessarily be offered for "the truth of the matter asserted," namely that Mr. Oppedisano made the remarks recounted by the declarants and attested to in open court by plaintiff.  Testimony by plaintiff's co-workers regarding Mr. Oppedisano's alleged remarks would be an admission, not hearsay; however, testimony by plaintiff as to what his co-workers ostensibly told him was said by Mr. Oppedisano is a classic example of hearsay.

Plaintiff attempts to sidestep the ban on introduction of hearsay evidence by claiming that the statements he purports to recount "were made by superiors during their employment" and, as such, "are admissions of party opponents." (Pltf's Mem. at p. 8).  In articulating this argument, plaintiff badly understates the barriers to admissibility of hearsay evidence and badly overstates the definition of an "agent" under the Federal Rules of Evidence.  "[A]s the proponent of the evidence, [plaintiff] bore the burden of establishing a foundation from which to conclude that the statement was within a hearsay exclusion." Los Angeles News Service v. CBS Broadcasting, Inc., 305 F.3d 924, 934 (9th Cir. 2002)(Citations omitted).  "At a bare minimum, the requisite

foundation demands something more than intuitive judgments emanating from broad generalities. Here, there is no 'more.'" Gomez v. Rivera Rodriguez, 344 F.3d 103, 117 (1st Cir. 2003(Citations omitted).

"Federal Rule of Evidence 801(d)(2)(D) provides that a statement is not hearsay if it is offered against a party and is 'a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.' This rule 'requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment.' [¶] When a court is evaluating whether such a foundation has been established, '[t]he contents of the statement shall be considered but are not alone sufficient to establish ... the agency or employment relationship and scope thereof.'" Sea-Land Service, Inc. v. Lozen Int'l, LLC, 285 F.3d 808, 821 (9th Cir. 2002)(Citations omitted).

As plaintiff correctly observes, "statements regarding employment matters are within the scope of the declarant's employment if the declarant was an advisor or other significant participant in the decision-making process that is the subject matter of the statement." (Pltf's Mem. at p. 8)(Citation omitted). See also Riisna v. American Broadcasting Companies, Inc., 219 F. Supp. 2d 568, 572 (S.D.N.Y. 2002). Where plaintiff goes astray is in his erroneous depiction of the declarants as "supervisory personnel" in the so-called "chain of command," and his misguided assumption that the declarants served as "an advisor or other significant participant in the decision-making process that is the subject matter of the statement[s]" in question.

The record reflects that at Main Enterprises the decision to authorize, or not authorize as the case may be, a leave request, whether for vacation, fulfillment of reserve obligations, or any other purpose, is the exclusive province of Mr. Oppedisano. Lower level personnel with a "need

to know" are given notice of an employee's application for leave but had no say in the final decision to approve or disapprove the request. (Pltf's Dep. at pp. 146-50, Oppedisano Dep. at pp. 39-41, 91-97).[1]    Plaintiff, therefore, is incapable of making the requisite foundational showing that the declarants, or any of them, were responsible for, or influenced, the decisions that formed the subject matter of the statements ostensibly made by Mr. Oppedisano and reported to plaintiff.  Cf. Cariglia v. Hertz Equipment Rental Corp., __ F.3d __, 2004 WL 720250, at *8-9 (1st Cir. April 5, 2004)(holding that in discrimination cases "corporate liability can attach when neutral decisionmakers rely on information that is manipulated by another employee who harbors illegitimate animus" because "the subordinate ..., by concealing relevant information from the decisionmaking employee[s] ..., or feeding false information to [them], is able to influence the decision.")(Citations and internal quotation marks omitted).

Plaintiff's proposed testimony concerning reports he received from colleagues regarding statements allegedly made by Mr. Oppedisano outside his presence relative to the decision to approve plaintiff's requests for reserve leave constitutes inadmissible hearsay and should be excluded.

## II.    Comment Attributable to Ms. Ianniello

Plaintiff claims that Ms. Ianniello's alleged remark to the effect that "well, the United States government is just going to have to check with the Oppedisano's to see if you could make it there [to reserve training]" is admissible as an admission of a party opponent or under the state of mind exception to the ban on hearsay evidence.  Because Ms. Ianniello was not plaintiff's manager and had no role in the leave approval process, her alleged remark concerns matters outside the scope of her employment and thus cannot be cast as an admission.  Plaintiff's hearsay

---

[1] Excerpts from the depositions of plaintiff, Mr. Oppedisano, and Ms. Ianniello are annexed hereto as Tabs A, B, and C, respectively.

4

testimony, moreover, is not admissible to show Ms. Ianniello's "then existing mental, emotional, or physical condition." Fed. R. Evid. 803(3).

"Three requirements must be satisfied for a statement to be admissible under the state of mind exception to the hearsay rule:

1. The statement must be contemporaneous with the mental state sought to be proven.

2. There must be no suspicious circumstances suggesting a motive for the declarant to fabricate or misrepresent his or her thoughts.

3. The declarant's state of mind must be relevant to an issue in the case."

5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 803.05[2][a], at pp. 803-27, 28 (Matthew Bender 2d ed. 2004). Here there is no relevance to Ms. Ianniello's state of mind.

Plaintiff contends otherwise, averring that "[t]he statement attributed to Ianniello is extremely relevant for establishing her existing state of mind, primarily her belief that Oppedisano would disapprove of (or even deny) Campbell's request for military leave." (Pltf's Mem. at pp. 10-11). It is undisputed, however, that although Ms. Ianniello communicated the termination decision at issue to plaintiff, she was just following directions and had no input in the decision making process whatsoever. (Ianniello Dep. at pp. 11-12, 22-25; Oppedisano Dep. at pp. 82-83). Whether Ms. Ianniello, or any other non-decision maker, subjectively believed Mr. Oppedisano harbored discriminatory animus toward plaintiff because of his reserve obligations -- and to be clear no such inference is readily apparent from the alleged remark in question -- is simply immaterial. (Def's Mem. at p. 4, n.2). See also Covington v. MCI Worldcom Network Services Inc., 2004 WL 619372, at *4 (6th Cir. March 26, 2004)(unpublished)("There was no probative value to the comments, because they could not

support an inference of discriminatory intent by MCI. Derogatory remarks by an immediate supervisor with meaningful influence on an employment decision may sometimes imply discrimination in the decision process. But [the declarant] was not [plaintiff's] supervisor and had no influence on the decision.")(Citations omitted).

Even if marginally relevant, and otherwise admissible under the state of mind exception to the hearsay exclusion, the Court "retain[s] discretion to exclude it if its 'probative value [was] substantially outweighed by the danger of unfair prejudice [or] confusion' under Rule 403. Costantino v. David M. Herzog, M.D., P.C., 203 F.3d 164, 173 (2d Cir. 2000)(Citations omitted). "The evidence [is] highly prejudicial, because this sort of irrelevant 'smoking gun' can win a discrimination case." Covington, at *4. Fairness dictates that the jury assess Mr. Oppedisano's motivation based on his own actions, conduct, and statements, and not be swayed by beliefs inferred from the remarks of others.

Plaintiff should therefore be prohibited from testifying as to the alleged comment by Ms. Ianniello concerning plaintiff's request for reserve leave.

### III.  **Conclusion**

For the foregoing reasons, and for the reasons stated in defendant's moving papers, plaintiff should be precluded from offering testimony concerning hearsay statements made by plaintiff's former colleagues attributing to Mr. Oppedisano displeasure about plaintiff's reserve obligations, and as to the alleged remark by Ms. Ianniello, in words or substance, that "well, the United States government is just going to have to check with the Oppedisano's to see if you can make it there" (i.e., to reserve training).

Respectfully submitted,

THE DEFENDANT,
MAIN ENTERPRISES, INC.


Lawrence Peikes (ct 07913)
Wiggin and Dana LLP
Its Attorneys
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
(203) 363-7600
(203) 363-7676 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on April 16, 2004, I caused the foregoing Reply Memorandum of

Law in Further Support of Defendant's Motion in Limine to be served by first-class U.S. mail,

postage pre-paid, on:

> Robert J. Sickinger, Esq.
> Cummings & Lockwood LLC
> 107 Elm Street
> Stamford, CT 06902

_____
Lawrence Peikes

\16130\1\85799.1

8

**EXHIBIT A**

COPY

Page 1

1

2  UNITED STATES DISTRICT COURT

3  DISTRICT OF CONNECTICUT

4  -------------------------------------------x

5  MITCHELL CAMPBELL,

6

7                              Plaintiff,

8              -against-        Civil Action No.

9                              3:03 CV 0246   (SRU)

10  MAIN ENTERPRISES, INC.,

11

12

13                              Defendant.

14  -------------------------------------------x

15                    October 23, 2003

16                    9:46 a.m.

17

18          Examination Before Trial of MITCHELL

19      CAMPBELL, taken by Defendant, pursuant to

20      court order, held at the offices of Wiggin

21      & Dana 400 Atlantic Street, Stamford,

22      Connecticut, New York, New York, before

23      Michele DiEdwards a Notary Public within

24      and for the State of New York.

25

1                    M. Campbell

2              MR. PEIKES:  Mark this Request and

3        Approval Vacation/Personal form, it's ME

4        number 255.

5              (Defendant's Exhibit No. 7, Request

6        and Approval Vacation/Personal, Bates No.

7        ME-255, marked for identification as of

8        this date.)

9        Q      Mr. Campbell, the reporter has just

10   handed you what has been marked as Exhibit 7 to

11   your deposition, it's a one page document.  It's

12   the same form as Exhibits 5 and 6 with a Post-It

13   note in the left-hand corner with handwriting on

14   it.  It's Bates number of ME255.  Do you

15   recognize this document?

16              (Handing document to witness.)

17        A      Yes, sir.

18        Q      Have you ever seen this document

19   with the Post-It note on it?

20        A      I have seen one with the Post-It,

21   yes.

22        Q      How did you come into the possession

23   of the form with the Post-It note on it?

24        A      I believe my immediate supervisor

25   had brought it and given it to me.

1                           M. Campbell

2           Q        Is this your handwriting above the

3    line that says do not write below this line?

4           A        That's correct.

5           Q        So you were seeking a vacation in

6    April to go on a Western Carribean Cruise?

7           A        Yes, sir.  That's a paid vacation

8    for my family.

9           Q        Was your vacation in 1999 approved?

10          A        Yes, it was approved.

11          Q        Was there a note on this one for

12   1999?

13          A        No, there was not a note for my

14   vacation request.

15          Q        Did you ever get an indication that

16   your vacation request might not get approved in

17   1999?

18          A        For that specific date I don't

19   recall if he indicated that he was not going to

20   approve it or not.

21          Q        Ultimately it was approved?

22          A        Ultimately it was approved.

23          Q        Do you recognize the handwriting on

24   the Post-It note?

25          A        Do I recognize it, no.

```
 1                        M. Campbell
 2        Q        Do you know whose handwriting it is?
 3        A        It looks to be Kenny Oppedisano.
 4        Q        I apologize, who gave you back this
 5   form we have the Post-It on?
 6        A        I believe Robert Cahn.
 7        Q        Did you have a discussion with
 8   Mr. Cahn at that time?
 9        A        I can't recall.
10        Q        What did you do after receiving this
11   form back with the Post-It note on it?
12        A        I believe I just shoved it in with
13   my work stuff.
14        Q        What, if anything, did you do to
15   seek approval of this vacation request after you
16   saw this Post-It note?
17        A        I personally went to Kenny and I
18   explained the situation that the entire Campbell
19   family, there was 23 of us, this was a vacation
20   paid to my family and to my brother's and sister
21   by my parents.  The entire family was going to be
22   there and it was imperative that I go.  It was a
23   family reunion that's why it was a very important
24   for me to attend.  That's why I approached Kenny
25   and asked him what the deal was.
```

1                    M. Campbell

2         Q       Did you have some conversation with

3    Mr. Oppedisano in Mr. Oppedisano's office?

4         A       I believe it was Linda's office.

5         Q       When you offered that explanation as

6    to the need for this vacation what did he say in

7    reply?

8         A       I had mentioned it earlier.  His

9    response was, gee, Mitch, if I approve this you

10   take two weeks off and you're eligible for two

11   weeks vacation per year and you also take two

12   weeks off for reserve duty so basically I can't

13   count on you for one month out of a year to be

14   there for me.  I was eligible for three weeks

15   vacation.  I didn't have the heart to tell him at

16   that time.  He said reluctantly I'm going to let

17   you go this time.

18        Q       Do you remember anything else that

19   was discussed during course of the conversation?

20        A       That was basically the gist of the

21   conversation.

22        Q       So Mr. Oppedisano ultimately

23   approved this vacation?

24        A       Ultimately he approved it.

25        Q       Were you paid for these two weeks?

1                          M. Campbell

2          A        All of my vacations were paid time

3    off.

4          Q        Were you penalized in any way for

5    taking off for this vacation?

6          A        As far as I know, no.

7          Q        During the period of your tenure

8    with Main Enterprises do you know of any other

9    employee who was a reservist?

10         A        I believe I was the first reservist

11   working for Main Enterprises.

12         Q        Do you know whether there were any

13   others after you?

14         A        I don't know of any others.

15         Q        So the answer to my original

16   question is no, you're not aware of any employee

17   during your tenure with the company that had

18   reserve obligations?

19         A        Correct.

20         Q        Did you ultimately received a copy

21   of this form back with Mr. Oppedisano's signature

22   and a checkmark in the approved box?

23         A        I don't recall.  I don't think so.

24         Q        Were you provided with the original

25   of this document with the Post-It note on it by